**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

       *Plaintiff*,

   v.

OSCAR J. GONZALEZ,

       *Defendant*.

Crim. No. 20-1060

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Oscar Gonzalez's *pro se* motion for compassionate release. D.E. 43. The Government filed opposition, D.E. 44, to which Gonzalez replied, D.E. 45. Defendant argues that he should be released because of COVID-19 and the Section 3553(a) factors. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, Defendant's motion is denied.

### I.   BACKGROUND

#### A.  Underlying Criminal Proceedings

In January 2020, Gonzalez agreed to purchase approximately 50 kilograms of cocaine for $24,000 per kilogram. Presentence Investigation Report ("PSR") ¶ 14. The seller, however, was a confidential source ("CS") working with law enforcement. Gonzalez agreed to meet the CS in

---

[1] Defendant's brief in support of his motion is referred to as "Br." (D.E. 43); the Government's opposition brief is referred to as "Opp." (D.E. 44); and Defendant's reply brief is referred to as "Reply." (D.E. 45).

Union County, New Jersey, for a "sample"; Gonzalez agreed to buy initially 1 kilogram of cocaine for $24,000 and to take an additional 2 kilograms on consignment.  *Id.* ¶ 15.  On January 26, 2020, Gonzalez was arrested during the transaction.  *Id.* ¶¶ 16-18.  Gonzalez was then released to home detention after being charged by federal complaint.

In April 2020, while on pretrial release, Gonzalez offered to sell two individuals approximately 5 kilograms of fentanyl.  *Id.* ¶ 20.  On April 24, 2020, Gonzalez sent a courier to deliver the fentanyl.  *Id.* ¶¶ 20-21.  Law enforcement stopped the courier's car and found five kilograms of fentanyl along with marijuana and heroin.  *Id.* ¶ 21.

On December 14, 2020, Gonzalez pled guilty to a two-count Information, charging him with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  D.E. 29-31.  Defendant's United States Sentencing Guidelines range was 121 to 151 months.  On April 21, 2021, the Court sentenced Gonzalez to 144 months' imprisonment followed by 5 years' supervised release.  D.E. 38, 40.

Gonzalez is currently housed in FCI Allenwood Low, with an anticipated release date of July 13, 2030.

**B.  COVID-19 Pandemic**

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person."  *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021),     https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html #background.  "COVID-19 is primarily transmitted from person-to-person through respiratory

droplets.  These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.*  Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death).  *Id.*  As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices.  *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases.  *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.   For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties.  *Id.*  Those 85 or older are at greatest risk.  *Id.*  Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States.  *Id.*  The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection, immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis.  *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last updated Feb. 25,

2022),[2]        https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of June 1, 2022, the United States has had 83,949,036 COVID-19 cases, resulting in 1,002,067 deaths.   *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited June 1, 2022).

### A. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp.   Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days.  *Id.*  Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services.  *Id.*  The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission."  *Id.*  The BOP screens all new inmates for virus "exposure risk factors and symptoms."  *Id.*  Any new inmate who is asymptomatic but has had a risk of exposure is quarantined.  *Id.*  According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff.  Opp. at 4.  The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff.  *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus:  group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and

---

[2] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of June 1, 2022, the BOP had administered 319,252 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 1, 2022).

The BOP COVID-19 current statistics are as follows: (1) 117 inmates and 243 staff presently have confirmed positive tests; (2) 51,270 inmates and 12,728 staff have recovered; and (3) 295 inmates and 7 staff have died. *Id.* FCI Allenwood Low, where Defendant is housed, currently reports 0 inmate and 0 staff cases. *Id.* In addition, 390 inmates and 23 staff have recovered, and 1 inmate has died. *Id.*

**C. The Parties' Arguments**

Defendant is 38 years old. Defendant claims that his motion should be granted for three reasons: (1) hardships related to the COVID-19 pandemic, (2) his overly harsh sentence above the mandatory minimum, and (3) his status as an alien which prevents him from obtaining certain benefits. Br. at 1. As to the pandemic, Gonzalez asserts that FCI Allenwood Low has suffered

5

mass outbreaks, that he tested positive in January 2022 (although he did not have any severe symptoms), and that the facilities are inadequate.  *Id.* at 5-6.  As to his sentence, Gonzalez argues that his attorney thought that he would only receive the mandatory minimum and that his sentence should be reduced to the mandatory minimum because he immediately accepted responsibility and has rehabilitated himself.  *Id.* at 7.  As to his final point, Gonzalez indicates that because he is an alien, he is ineligible for certain time credits earned through programming.  *Id.* at 7-8.

The Government opposes Defendant's motion, arguing that Defendant has not shown extraordinary and compelling reasons to justify his release.  Opp. at 11.  The Government asserts that Gonzalez has received the vaccine and booster.  *Id.*  The Government continues that because Defendant also contracted COVID-19 and recovered, his risk is significantly diminished.  *Id.* at 12 (citations omitted).  The Government also asserts that neither Gonzalez's sentence nor his status as an alien justify his compassionate release.  *Id.* at 13.  Finally, the Government concludes that the Section 3553(a) factors weigh heavily against Defendant's release. *Id.* at 14-15.

On March 13, 2022, Gonzalez petitioned the warden of FCI Allenwood Low to be released. His request was denied shortly thereafter.

## II.     LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment.  The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not

exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a)* to the extent that they are applicable, if it finds that—

> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).  The Government does not contest that Defendant has satisfied the statutory exhaustion requirement.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provides four circumstances that can be considered extraordinary and compelling:  (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).  In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021),

the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant.  *Id.*

### III.   ANALYSIS

The Court finds that Gonzalez has not met his burden of demonstrating extraordinary and compelling reasons to justify his release.  The Court also finds that Defendant has failed to show that the Section 3553(a) factors support his release.

Turning first to Defendant's arguments concerning the pandemic, Gonzalez does not claim to have any conditions that put him at risk of having a severe reaction should he contract the virus. And Gonzalez has received the vaccine and a booster.  Moreover, he recently contracted COVID-19 but fully recovered without any severe symptoms. Finally, FCI Allenwood Low currently has no positive cases.  For the foregoing reasons, Gonzalez's arguments as to the pandemic do not reflect extraordinary and compelling reasons.

The Court finds that Gonzalez has not demonstrated that the Section 3553(a) factors support his release.  While imprisoned, Defendant has completed numerous educational courses. D.E. 43 at 11-12.  These positive steps, however, do not surpass the seriousness of Defendant's offenses.  Defendant was involved in two separate drug transactions, one involving large amounts of cocaine and the other involving large amounts of fentanyl.  Both drugs are dangerous, and the hazardous nature of fentanyl cannot be overstated.  Moreover, he committed the fentanyl offense while on pretrial release for the cocaine matter, demonstrating an utter disregard for his bail

conditions and the justice system.  In addition, in 2010, he was also arrested in Louisiana with approximately 8 kilograms of cocaine, although he received a light sentence.  PSR ¶ 43.  Moreover, in 2017, he was also charged with another felony and has since pled guilty to cocaine distribution. *Id.* at ¶ 45.  Thus, he not only committed the fentanyl offense while he was facing federal criminal charges, but while he was also under other felony charges.  Defendant's sentence of 24 months above the mandatory 10-year minimum was more than justified.  In addition, Defendant's alien status was known to the Court at the time of the sentencing; the Court does not find that it militates in favor of his release.  Finally, Defendant has served less than 20% of his sentence, which also weighs against granting his motion. *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020).  The Third Circuit has reasoned as follows:

> We have not previously considered whether a district court abuses its discretion by denying a motion for compassionate release based on the amount of time remaining to be served in the inmate's sentence. But numerous district courts have taken this into account in considering whether to grant compassionate release. *See, e.g.*, *United States v. Bogdanoff*, 459 F. Supp. 3d 653 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1–2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration"). And at least one of our sister circuits has approved that consideration. *See* [*United States v.*] *Chambliss*, 948 F.3d [691,] 694 (5th Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30-year sentence). We agree, as this consideration is consistent with the text of 18 U.S.C. § 3582(c)(1)(A), which, again, requires a court reviewing a motion for compassionate release to "consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable." Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—

along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors. Hence we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.

*Id.* at 330-31 (footnote omitted).

## IV.   CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 2nd day of June 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 43, is **DENIED**; and it is further

**ORDERED** that the Clerk's shall deliver a copy of this Opinion and Order to Defendant by regular mail.

John Michael Vazquez, U.S.D.J.

10